IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXO GROUP LTD.<br>d/b/a/ GLAXOSMITHKLINE )<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>      v.<br><br>SPECTRUM PHARMACEUTICALS, INC.,<br><br>    Defendant and<br>    Counterclaim Plaintiff | C.A. No. 05-99-GMS |

## PLAINTIFF'S REPLY TO COUNTERCLAIM

Plaintiff and Counterclaim-Defendant, Glaxo Group Ltd d/b/a GlaxoSmithKline ("GSK"), as and for its reply to the counterclaim of Defendant and Counterclaim-Plaintiff, Spectrum Pharmaceuticals, Inc. ("Spectrum"), in its "First Amended Answer and Counterclaim of Defendant-Counterclaimant Spectrum Pharmaceuticals, Inc." ("Amended Answer"), avers as follows:

   1.   GSK admits the averments of paragraph 1.

   2.   GSK admits the averments of paragraph 2.

   3.   GSK denies the averments of paragraph 3, except admits that Spectrum purports to bring counterclaims under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and that Spectrum purports to base jurisdiction over the subject matter of its counterclaims on 28 U.S.C. §§ 1331 and 1338(a). GSK further states that there is a controversy

between GSK and Spectrum, and that Spectrum purports to base its declaratory judgment counterclaims upon the existence of that controversy.

   4. GSK denies the averments of paragraph 4, except states that it does not contest venue.

   5. GSK admits the averments of paragraph 5.

   6. GSK admits the averments of paragraph 6.

   7. GSK admits the averments of paragraph 7.

   8. GSK admits the averments of paragraph 8.

   9. GSK admits the averments of paragraph 9.

   10. GSK admits the averments of paragraph 10.

   11. GSK admits the averments of paragraph 11.

   12. GSK denies the averments of paragraph 12, except states that it received a Notice of Paragraph IV Certification from Spectrum, dated January 4, 2005, which purported to set forth the factual and legal basis for Spectrum's Paragraph IV certification and refers to that Notice for its contents.

   13. GSK admits the averments of paragraph 13.

   14. GSK denies the averments of paragraph 14, except states that there exist actual and justiciable controversies between GSK and Spectrum.

   15. GSK repeats and realleges each answer to each averment of paragraphs 1-14 as if set forth here verbatim.

   16. GSK denies the averments of paragraph 16, except states that this count purports to seek a declaration that U.S. Patent No. 5,037,845 ("'845 patent") is invalid.

   17. GSK denies the averments of paragraph 17.

18. GSK denies the averments of paragraph 18.

19. GSK denies the averments of paragraph 19.

20. GSK denies the averments of paragraph 20.

21. GSK denies the averments of paragraph 21.

22. GSK realleges each answer to each averment of paragraphs 1-21 as if set forth here verbatim.

23. GSK denies the averments of paragraph 23, except admits that this count purports to seek a declaration that Spectrum's Sumatriptan Injectable Product does not infringe any claim of the '845 patent.

24. GSK denies the averments of paragraph 24.

25. GSK realleges each answer to each averment of paragraphs 1-24 as if set forth here verbatim.

26. GSK denies the averments of paragraph 26, except admits that this count purports to seek a declaration that the '845 patent is unenforceable.

27. GSK admits the averments of paragraph 27.

28. GSK denies the averments of paragraph 28, except states that Richard Fichter participated in an interview with the Examiner on January 11, 1990 and that Mr. Fichter presented a draft of the Jackson Declaration at the interview, and refers to the Jackson Declaration for its contents.

29. GSK denies the averments of paragraph 29, except states that Mr. Fichter's interview with the Examiner was memorialized in an Interview Summary Record, and refers to the Interview Summary Record for its contents.

30. GSK states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 30, except admits that the Jackson Declaration was made of record by the Examiner and that the Examiner later withdrew her obviousness rejection.

31. GSK denies the averments of paragraph 31.

32. GSK denies the averments of paragraph 32, except states that the Jackson Declaration mistakenly referred to a different acid concentration from the one at which the NAP tests whose results were the basis for comparison were performed.

33. GSK denies the averments of paragraph 33.

34. GSK denies the averments of paragraph 34.

35. GSK denies the averments of paragraph 35, except refers to the Jackson Declaration for its contents.

36. GSK denies the averments of paragraph 36, except states that the Jackson Declaration contained conclusions concerning the mutagenic potential of sumatriptan and the compound of the closest prior art and refers to the Jackson Declaration for its contents.

37. GSK denies the averments of paragraph 37, except states that the Jackson Declaration mistakenly referred to a different acid concentration from the one at which the NAP tests whose results were the basis for comparison were performed, and that NAP tests on the compound of the closest prior art performed during 1983 using 0.06% acetic acid were negative.

38. GSK denies the averments of paragraph 38.

39. GSK denies the averments of paragraph 39.

40. GSK denies the averments of paragraph 40.

41. GSK denies the averments of paragraph 41, except states that Dr. Jackson testified at his deposition in this action that he would not have reviewed the original, raw data reported in his declaration before signing that declaration.

42. GSK denies the averments of paragraph 42, except states that Dr. Jackson has testified that the Jackson Declaration inaccurately stated the acid concentration at which the NAP tests whose results were the basis for comparison were performed.

43. GSK denies the averments of paragraph 43.

44. GSK states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 44.

45. GSK denies the averments of paragraph 45.

46. GSK denies the averments of paragraph 46.

47. GSK denies the averments of paragraph 47.

48. GSK denies the averments of paragraph 48, except states that Mr. Fichter had an interview with the Examiner on January 11, 1990 at which he presented a draft of the Humphrey Declaration.

49. GSK denies the averments of paragraph 49, except states that Mr. Fichter had an interview with the Examiner concerning, *inter alia*, the Humphrey Declaration, and refers to the Humphrey Declaration and the Interview Summary Record of that interview for a description of their respective contents.

50. GSK denies the averments of paragraph 50, except states that Mr. Fichter had an interview with the Examiner concerning, *inter alia*, the Humphrey Declaration, and refers to the Humphrey Declaration and the Interview Summary Record of that interview for a description of their respective contents.

51.     GSK denies the averments of paragraph 51, except states that Mr. Fichter had an interview with the Examiner concerning, *inter alia*, the Humphrey Declaration, and refers to the Humphrey Declaration and the Interview Summary Record of that interview for a description of their respective contents.

52.     GSK admits the averments of paragraph 52.

53.     GSK states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 53, except admits that the Examiner later withdrew her obviousness rejection over the '470 patent.

54.     GSK denies the averments of paragraph 54.

55.     GSK denies the averments of paragraph 55.

56.     GSK admits the averments of paragraph 56 and refers to the Humphrey Declaration for its contents.

57.     GSK denies the averments of paragraph 57, except states that a potential development compound generally advanced to further testing if it had an $RT_{50}$ value of greater than two hours after cumulative intravenous dosing in the test designed to determine the *in vivo* potency of candidate compounds.

58.     GSK denies the averments of paragraph 58, except states that the Humphrey Declaration contained a Table 1 and refers to the Declaration for the contents of Table 1.

59.     GSK denies the averments of paragraph 59, except states that the Humphrey Declaration states that Compound III was eliminated from further consideration and refers to the Humphrey Declaration for its contents.

60.     GSK denies the averments of paragraph 60.

61.  GSK denies the averments of paragraph 61, except states that one of the two mean $RT_{50}$ values for Compound II provided in the Humphrey Declaration was obtained based on four tests carried out with cumulative intravenous dosing of Compound II in anaesthetized dogs and refers to the Humphrey Declaration for its contents.

62.  GSK denies the averments of paragraph 62, except states that one of the four tests was performed using a cumulative intravenous dose of 100 µg of Compound II per kilogram of weight of the anaesthetized dog.

63.  GSK admits the averments of paragraph 63.

64.  GSK denies the averments of paragraph 64, except states that two of the four tests were performed using a cumulative intravenous dose of 300 µg of Compound II per kg of weight of the anaesthetized dog.

65.  GSK denies the averments of paragraph 65.

66.  GSK denies the averments of paragraph 66 and refers to the Humphrey Declaration for its contents.

67.  GSK denies the averments of paragraph 67 and refers to the Humphrey Declaration for its contents.

68.  GSK denies the averments of paragraph 68.

69.  GSK denies the averments of paragraph 69, except states that one of the two $RT_{50}$ values for Compound III provided in the Humphrey Declaration was obtained based on a test carried out with cumulative intravenous dosing of Compound III in an anaesthetized dog.

70.  GSK denies the averments of paragraph 70, except states that Compound III had an $RT_{50}$ value of approximately 1 hour and 45 minutes after cumulative intravenous dosing in the test designed to determine the *in vivo* potency of candidate compounds.

71.     GSK denies the averments of paragraph 71 and refers to the Humphrey Declaration for its contents.

72.     GSK denies the averments of paragraph 72, except states that two cumulative intravenous dose *in vivo* potency tests were performed on Compound III in March 1990.

73.     GSK denies the averments of paragraph 73, except states that $RT_{50}$ values of greater than two hours were derived in the March 1990 cumulative intravenous dose *in vivo* potency tests.

74.     GSK denies the averments of paragraph 74.

75.     GSK denies the averments of paragraph 75.

76.     GSK denies the averments of paragraph 76.

77.     GSK denies the averments of paragraph 77.

78.     GSK denies the averments of paragraph 78.

79.     GSK denies the averments of paragraph 79, except states that Dr. Humphrey testified at his deposition in this action that he would not have reviewed all of the original, raw data reported in his declaration before signing that declaration.

80.     GSK denies the averments of paragraph 80.

81.     GSK denies the averments of paragraph 81.

82.     GSK denies the averments of paragraph 82.

83.     GSK denies the averments of paragraph 83.

84.     GSK denies the averments of paragraph 84.

85.     GSK denies the averments of paragraph 85, except states that on July 27, 1990, the Examiner in the '845 patent prosecution mailed a Final Office Action and that, on

December 26, 1990, GSK's attorney submitted a Request for Reconsideration, and refers to those documents for their respective contents.

86. GSK denies the averments of paragraph 86, except states that the Examiner called GSK's attorney on January 17, 1991, that the subsequent telephone interview was memorialized by the Examiner in an Examiner Interview Summary Record, and refers to that Examiner Interview Summary Record for its contents.

87. GSK denies the averments of paragraph 87, except admits that GSK's attorney filed a Supplemental Response and Clarification on January 17, 1991, and refers to that document for its contents.

88. GSK denies the averments of paragraph 88, except admits that GSK's attorney submitted some of the documents filed in the '874 application, including the Declaration of Michael Howard Tarbit, to the Examiner of the '845 patent, and refers to those documents and that Declaration for their respective contents.

89. GSK states that it lacks knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 89, except admits that the Examiner withdrew her obviousness double-patenting rejection and allowed the claims to issue.

90. GSK denies the averments of paragraph 90 and refers to the Tarbit Declaration for its contents.

91. GSK denies the averments of paragraph 91 and refers to the Tarbit Declaration for its contents.

92. GSK denies the averments of paragraph 92, except admits that Mr. Fichter submitted a Supplemental Response and Clarification and refers to that Supplemental Response and Clarification for its contents.

93. GSK denies the averments of paragraph 93.

94. GSK denies the averments of paragraph 94, except admits that Mr. Fichter cited *E.I. du Pont de Nemours & Co. v. Ladd, Comr. Pats.*, 328 F.2d 547 (D.C. Cir. 1964), and refers to the opinion in that case for its contents.

95. GSK denies the averments of paragraph 95.

96. GSK denies the averments of paragraph 96.

GSK states that the final paragraph contains a request for relief for which no response is required. To the extent that one is required, GSK denies that Spectrum is entitled to any relief.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney* (#3052)
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff*
  *Glaxo Group Ltd., d/b/a GlaxoSmithKline*

OF COUNSEL:

Evan R. Chesler
Richard J. Stark
David Greenwald
CRAVATH, SWAINE & MOORE
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
(212) 474-1000

Robert L. Baechtold
Nicholas M. Cannella
Colleen Tracy
Leisa Smith
FITZPATRICK, CELLA, HARPER & SCINTO
30 Rockefeller Plaza
New York, NY  10112-3801
(212) 218-2100


March 8, 2006
510022

CERTIFICATE OF SERVICE

I, Julia Heaney, hereby certify that on March 8, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Edmond D. Johnson
> The Bayard Fim

I also certify that copies were caused to be served on March 8, 2006 upon the following in the manner indicated:

**BY HAND**

Edmond D. Johnson
Peter B. Ladig
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

**BY FACSIMILE**

Anthony Fenwick
Latham & Watkins LLP
135 Commonwealth Drive
Menlo Park, CA  94025

Maximillian A. Grant
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004

*/s/ Julia Heaney (#3052)*
Julia Heaney