# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 Fax

JULIA HEANEY
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

May 19, 2006

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
844 King Street
Wilmington, DE 19801

    Re:    GlaxoSmithKline v. Spectrum Pharmaceuticals, Inc.
             C.A. No. 05-99-GMS

Dear Judge Sleet:

       Plaintiff Glaxo Group Ltd ("GSK") respectfully requests leave to file two summary judgment motions directed to the invalidity defenses and counterclaims[1] raised by defendant Spectrum Pharmaceuticals, Inc. ("Spectrum"). GSK's first motion would address Spectrum's defense that the patent-in-suit is invalid because it is anticipated by an earlier patent held by GSK. The second would address Spectrum's other invalidity defenses.[2]

**Procedural Background**

       This is a patent infringement action to enforce U.S. Patent No. 5,037,845 (the "'845 Patent"), which claims, among other things, the compound, sumatriptan succinate. Sumatriptan succinate is the active ingredient in GSK's Imitrex brand of tablet and injectable medications, which are very widely used in the treatment of migraine. GSK filed this action pursuant to 35 U.S.C. § 271(e)(2) after Spectrum sought permission from the FDA to market injectable products containing sumatriptan succinate prior to the expiration of the '845 Patent.

       Because Spectrum agreed recently that its proposed products, if commercially manufactured, used, sold, offered for sale and/or imported, would infringe the relevant claims of the '845 Patent, the only remaining substantive issues in this action are patent validity and inequitable conduct. Spectrum's invalidity defenses are premised on 35 U.S.C. § 101 (statutory double patenting, non-statutory subject matter and/or lack of utility), § 102 (anticipation), § 103 (obviousness) and § 112 (written description, enablement and/or definiteness), as well as on the doctrine of obviousness-type double patenting. Spectrum bears the burden of proof on all of those defenses by clear and convincing evidence.

---

[1]     For the sake of brevity, the remainder of this letter will refer only to Spectrum's "defenses" with the understanding that such references encompass the corresponding portions of Spectrum's declaratory judgment counterclaims.

[2]     GSK is prepared to support each of the assertions in this letter brief with additional citations to legal authority and to the record evidence, which it has omitted here solely because of space considerations. Copies of the '845 and '470 Patents are attached as Exhibits A and B.

## The Patent-in-Suit ('845 Patent)

For purposes of this letter brief, GSK focuses on Claims 1 and 4 of the '845 Patent. Claim 1 covers a chemical compound now known as sumatriptan and its "physiologically acceptable salts", *i.e.*, salts that are safe to administer to a human being. Sumatriptan itself is a type of chemical compound known as a "free base." When mixed with an acid, a free base compound forms a different compound, known as a "salt." Sumatriptan succinate, a physiologically acceptable salt of sumatriptan, is specifically claimed in Claim 4. Every claim of the '845 Patent contains a limitation directed to sumatriptan, sumatriptan succinate and/or other sumatriptan salts.

## The Prior Art Patent ('470 Patent)

Spectrum apparently bases its invalidity defenses on U.S. Patent No. 4,816,470 (the "'470 Patent"). The '470 Patent is a "genus" patent: most of its claims are directed not to individual chemical compounds but to different genera, or classes, of chemical compounds. The patent claims each genus by referring to the following general formula:

$$R_1R_2NSO_2CHR_3 \cdots \text{(indole ring)} \cdots AlkNR_4R_5$$

In that formula, $R_1$, $R_2$, $R_3$, $R_4$, $R_5$ and Alk are variables; the remaining letters and geometric shapes represent particular atoms. By specifying a range of atoms for each variable in the formula, each genus claim of the '470 Patent encompasses all of the individual chemical compounds defined by the resulting permutations.

The various chemical compounds defined by the general formula are free base compounds. However, each genus claim of the '470 Patent also covers "physiologically acceptable salts" of each free base compound in the genus. As a result, the number of compounds belonging to a given genus of the '470 Patent is the number of free base compounds multiplied by the number of physiologically acceptable salts.

Although neither sumatriptan nor sumatriptan succinate are specifically named in the '470 Patent, they fall within the scope of various genera found in that patent. For example, if exactly the right chemical group is selected for each of the variables in the general formula and exactly the right salt is selected from the universe of physiologically acceptable salts (of which there are at least fifty), the resulting chemical compound would be sumatriptan succinate.

## Anticipation (35 U.S.C. § 102)

A patent claim is anticipated when each limitation of that claim is expressly or inherently disclosed in a single prior art reference. The '470 Patent does not expressly disclose the '845 patent claim limitations directed to sumatriptan or sumatriptan succinate since neither compound is specifically named, drawn out or claimed in the '470 Patent. Furthermore, it is a well-settled general rule that, for anticipation purposes, disclosure of a genus does not constitute inherent disclosure of all of the members of that genus. *See, e.g., Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1367 (Fed. Cir. 2004), *cert. granted*, 126 S. Ct. 601 (2005). Consequently, the mere fact that sumatriptan or sumatriptan succinate falls within the scope of various genera disclosed in the '470 Patent does not anticipate either compound.

The only pertinent exception to the general rule was articulated by the Federal Circuit's predecessor court in *In re Petering*, 301 F.2d 676 (C.C.P.A. 1962). *Petering* recognized that a prior art genus could disclose such a small class of compounds that a skilled person would immediately and simultaneously see in his mind all of the members in that class. *Id*. at 681 ("one skilled in this art would,

The Honorable Gregory M. Sleet
May 19, 2006
Page 3

on reading the [prior art] patent, at once envisage *each member* of this limited class." (emphasis in original)). In that situation, the individual members of the genus are necessarily disclosed because the skilled person immediately sees them all just by looking at the genus. The *Petering* test has not been applied often, and, in over forty years since *Petering* was decided, the largest genus ever held to anticipate consisted of twenty compounds.

Because issued patents are presumed valid, Spectrum must prove invalidity by clear and convincing evidence. That burden is even more difficult to meet where, as here, the patent examiner (who was also the examiner of the '470 Patent) specifically considered the fact that sumatriptan was within the scope of '470 Patent genera before deciding that the '845 Patent was not anticipated.[3] The clear and convincing evidence standard applies in the summary judgment context, and expert testimony contradicting the plain language of a prior art reference is insufficient to create a genuine issue of fact.

The '470 Patent does not anticipate sumatriptan or sumatriptan succinate because it contains no genus small enough both to meet the *Petering* test and still to encompass those compounds. All the relevant genera of the '470 Patent include physiologically acceptable salts. As defendant's expert admits, there were over fifty known physiologically acceptable salt forms during the relevant time frame. Defendants expert further admits that the smallest genus claim of the '470 Patent—Claim 7—includes salts. Consequently, regardless of the number of free base compounds in each genus of the '470 Patent, those genera range in size from over a thousand compounds to tens of millions of compounds. A chemist of ordinary skill could never "at once envisage each member" of a genus that large.

Moreover, even if the relevant genera were somehow restricted to free base compounds, Claim 7 would still contain 102 different free base compounds. A chemist of ordinary skill could not immediately and simultaneously envisage each member of such a large genus, which is over five times larger than the largest genus ever found to meet the *Petering* test. Indeed, a genus in excess of 100 compounds has been found too large to anticipate under the *Petering* test. *See Schering Corp. v. Precision-Cosmet Co.*, 614 F. Supp. 1368, 1373-74 (D. Del. 1985). *See also Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) (a "very small genus" can anticipate under *Petering*; temperature range of over 100 degrees is not a small genus).[4]

Therefore, because there is no express disclosure of sumatriptan or sumatriptan succinate in the '470 Patent, because the fact that both compounds fall within various genera is not inherent disclosure, and since any relevant genus of the '470 Patent is too large to meet the *Petering* test, summary judgment is appropriate on Spectrum's anticipation defenses.

### Obviousness (35 U.S.C. § 103) and Obviousness-Type (Non-Statutory) Double Patenting

The chemical structure of sumatriptan and sumatriptan succinate is similar to that of certain compounds specifically named in the '470 Patent. To the extent there is a patent law presumption that sumatriptan and sumatriptan succinate are "obvious" under 35 U.S.C. § 103 because of structural similarity, that presumption of obviousness is overcome by a showing that those compounds possess an

---

[3] In addition to anticipation, the examiner specifically considered the '470 Patent in connection with obviousness and obviousness-type double patenting, which makes it more difficult for Spectrum to meet its heavy burden of proof with respect to those defenses as well.

[4] Defendants' chemistry expert has attempted to contradict the plain language of the '470 Patent and shrink the scope of the Claim 7 genus by divining narrower "preferences" in the specification of the '470 Patent for certain variables. However, the (flawed) methodology defendants' expert uses would necessarily result in "preferences" for other variables in Claim 7. Those additional "preferences" would exclude both sumatriptan and sumatriptan succinate from the scope of any resulting genus, which would, in turn, preclude a finding of anticipation as a matter of law.

unexpected property in comparison with structurally similar compounds disclosed by the prior art. Although sumatriptan possesses various unexpected properties, for purposes of this motion GSK focuses on mutagenicity, a property measuring a compound's potential to cause undesirable genetic mutations under acidic conditions comparable to those that exist in the human stomach.

During the research project that led to the discovery of sumatriptan, GSK screened many potential anti-migraine compounds for mutagenicity. Unlike various compounds specifically named in the '470 Patent, sumatriptan showed a complete and unexpected absence of mutagenic potential in those screening tests.[5] The mutagenicity of '470 Patent compounds cannot be predicted on the basis of chemical structure, and GSK's toxicology expert has opined that sumatriptan's lack of mutagenecity was unexpected. Spectrum's toxicology expert did not opine to the contrary. Indeed, Spectrum's expert admitted at his deposition that he lacked the requisite expertise in, or understanding of, the scientific principles underlying the standard mutagenicity test GSK used (which he has never performed in the course of his career) to form any expectation, positive or negative, about whether sumatriptan and structurally similar compounds would be mutagenic. Therefore, Spectrum will be unable at trial to overcome GSK's showing that sumatriptan's lack of mutagenicity, demonstrated through repeated testing, is an unexpected property.

In contrast to anticipation or obviousness inquiries, which compare the claims of the patent-in-suit with disclosures found anywhere in prior art references, a double patenting inquiry compares the claims of the patent-in-suit against only the claims of a prior, commonly owned patent. There are two types of double patenting: statutory double patenting (discussed in the next section) and obviousness-type double patenting. Obviousness-type double patenting bars a patent claim that is not "patentably distinct"—which the Federal Circuit has held to mean the same thing as "obvious"—in comparison with the claim of a prior, commonly owned patent.

As with Section 103 obviousness, a showing of unexpected properties overcomes any presumption that a patent claim directed at a chemical compound is "obvious" when that compound is structurally similar to a compound specifically claimed in a prior patent. Consequently, in addition to precluding a finding of Section 103 obviousness, sumatriptan's unexpected lack of mutagenicity in comparison with certain compounds specifically claimed in the '470 Patent (or with structurally similar compounds claimed in other prior GSK patents) also precludes a finding of obviousness-type double patenting. Summary judgment on Spectrum's obviousness and obviousness-type double patenting defenses is therefore appropriate.

### Statutory Double Patenting, Statutory Subject Matter and Utility (35 U.S.C. § 101)

The prohibition against statutory double patenting is derived from the language of 35 U.S.C. § 101. Statutory double patenting invalidates a claim of the '845 Patent only if that claim has exactly the same substantive scope as a claim in a prior GSK patent, such that the claim in the '845 Patent cannot be

---

[5] Sumatriptan's lack of mutagenic potential in comparison to the particularly preferred compound of the '470 Patent was the subject of a declaration submitted to the examiner during prosecution of the '845 Patent. Owing to a typographical error, that declaration inadvertently misstated the acid concentration at which the tests were performed: it stated that the tests were performed at a weaker acid concentration when they had been performed using a stronger acid concentration. That typographical error is the basis for one of Spectrum's inequitable conduct defenses. However, apart from that error, the data in the declaration is accurate and entirely supports a showing of unexpected properties. Because the acidity of the human stomach can vary, it was standard practice at GSK to conduct mutagenicity testing at both the strong and weak acid concentrations. In fact, using a stronger acid concentration had the effect here of making the test more stringent, which made sumatriptan's complete lack of mutagenicity in that test even more notable and unexpected.

The Honorable Gregory M. Sleet
May 19, 2006
Page 5

infringed without concomitant infringement of a claim in a prior GSK patent, and vice versa. Because no claim of the '845 Patent has the same substantive scope as any claim of the '470 Patent (or of any other prior patent owned by GSK), there can be no finding of statutory double patenting.

The other discrete patentability requirements of Section 101, such as patentable subject matter and utility, are also clearly met by the '845 Patent. The tests for patentable subject matter or utility are very broad, excluding only such things as laws of nature or inventions with no conceivable use. Here, there can be no question that the claims of the '845 Patent—which are directed to chemical compounds, pharmaceutical compositions and methods of treating migraine—are all directed to patentable and useful subject matter. Summary judgment is therefore appropriate with respect to Spectrum's Section 101 defenses.

### Definiteness, Written Description and Enablement (35 U.S.C. § 112)

Although Spectrum has not articulated the basis for its pleaded defense under 35 U.S.C. § 112, none of the three major Section 112 defenses applies in this case. For purposes of this letter brief, GSK relies on Claim 4 of the '845 Patent as an example. Claim 4 covers "[a] compound according to claim 3, wherein the physiologically acceptable salt is the 1:1 succinate." Claim 3 ultimately depends on Claim 1, which claims sumatriptan and physiologically acceptable salts and solvates of sumatriptan. Accordingly, Claim 4 covers sumatriptan succinate, a physiologically acceptable salt of sumatriptan in which the ratio of sumatriptan to succinate is 1 to 1.

The pertinent substantive requirements of Section 112 are found in its first and second paragraphs. The second paragraph of Section 112 requires that a patent claim be "definite," meaning that a person of ordinary skill in the art must be able to discern the scope of that claim. Here, there can be no dispute as to the scope of Claim 4: it covers a single chemical compound, sumatriptan succinate. The first paragraph of Section 112 imposes two separate requirements on patent specifications: "written description" and "enablement." To satisfy the written description requirement, a specification must include sufficient detail for a person skilled in the art to conclude that the inventor invented what is claimed in the patent. Enablement requires that a skilled person be able to practice the claimed invention without undue experimentation. Both requirements are unquestionably met by the '845 Patent specification, which discloses numerous methods of preparing both sumatriptan and sumatriptan succinate, in addition to methods of preparing other sumatriptan salts. Therefore, because the requirements of definiteness, written description and enablement are met by Claim 4 (as well as by the specification and remaining claims of the '845 Patent), summary judgment is appropriate on Spectrum's Section 112 defenses.

### Conclusion

GSK respectfully submits that there are no genuine issues of material fact precluding grant of its proposed summary judgment motions. The grant of those motions would substantially streamline and reduce the scope of this case, which is particularly desirable in view of the limited time set aside for trial. If GSK's summary judgment motions were granted, trial would then be limited to consideration of Spectrum's inequitable conduct defenses, which involve discrete and narrow questions of pharmacology, toxicology, patent prosecution and intent.

Respectfully,

*/s/ Julia Heaney* (#3052)

cc:    Peter T. Dalleo, Clerk (By E-Filing)
       Edmond D. Johnson, Esquire (By E-Filing)
       Daniel G. Brown, Esquire (By E-mail)
       Colleen B. Tracy, Esquire (By E-mail)
       David Greenwald, Esquire (By E-mail)