# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

September 28, 2006

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
844 King Street
Wilmington, DE  19801

    Re:    Glaxo Group Ltd d/b/a GlaxoSmithKline v. Spectrum Pharmaceuticals, Inc.
            C.A. No. 05-99 (GMS)

Dear Judge Sleet:

        We represent plaintiff Glaxo Group Ltd d/b/a GlaxoSmithKline ("GSK") in this action. We write to request that the Court extend the time allotted for the November 14, 2006, bench trial from five days to ten days. The basis for this request is the number and complexity of issues to be tried, and the number of live witnesses whom the parties anticipate calling. The trial length was set in June 2005. Since then, the nature of the defenses has changed substantially, as set forth herein. As the parties have recently moved towards finalizing the Pre-Trial Order, it has become apparent that this action cannot be tried in five days.

        GSK has sought Spectrum's consent to this request. Spectrum's initial position was that the scheduling issue should be raised closer to trial. When GSK cited the need to approach the Court sooner rather than later, Spectrum refused to join GSK's request. With less than seven weeks remaining until trial, and aware that the length of the trial may affect the Court's overall calendar, we thought it prudent to raise this issue now.

**Procedural Background**

        This is an action for infringement of U.S. Patent No. 5,037,845 (the "'845 Patent"), which claims, among other things, the compound sumatriptan succinate. Sumatriptan succinate is the active ingredient in GSK's Imitrex brand of tablet and injectable medications, which are widely used in the treatment of migraine. GSK filed this action pursuant to 35 U.S.C. § 271(e)(2) after Spectrum sought permission from the FDA to market injectable products containing sumatriptan succinate prior to the expiration of the '845 Patent. Spectrum has stipulated that its proposed products, if marketed, would infringe the asserted patent claims. Consequently, the remaining issues in this action are validity and enforceability, issues on which Spectrum bears the burden of proof by clear and convincing evidence.

The trial date and length were set by the Court on June 8, 2005. At that time, discovery had not yet commenced, and GSK did not know the full scope of Spectrum's validity defenses and counterclaims. More importantly, Spectrum later asserted affirmative defenses and counterclaims based on inequitable conduct. The number of factual issues remaining to be litigated—complicated issues involving, among other things, organic and salt chemistry, drug development, pharmacology, toxicology and patent prosecution—and the number of witnesses the parties anticipate calling live at trial—8 experts and 8-10 fact witnesses—necessitate a longer trial.

**Inequitable Conduct**

Following the close of discovery, Spectrum asserted unenforceability based on three distinct theories of purported inequitable conduct. Spectrum alleges that there were materially false or misleading representations or omissions in two declarations (the Humphrey Declaration and the Jackson Declaration) and in other materials submitted during the prosecution of the '845 Patent. Each of Spectrum's theories involves a different set of issues and witnesses. Spectrum's challenge to the Humphrey Declaration will involve comparisons between three chemical compounds using four different pharmacological tests and will require testimony from 2 experts and 3 fact witnesses. The Jackson Declaration concerns toxicological testing for mutagenicity, specifically the tendency of chemical compounds to nitrosate (to gain additional groups of atoms containing nitrogen) under acidic conditions similar to those prevailing in the human stomach, and the tendency of those nitrosated compounds to cause genetic mutations. Spectrum's challenge to the Jackson Declaration will involve testimony from 2 experts and 2-3 fact witnesses. Finally, Spectrum has attacked the conduct of GSK's patent attorney in submitting, at the examiner's request, excerpts from the prosecution history of another patent. Evaluation of that inequitable conduct challenge will require a detailed review of the prosecution history of the '845 Patent and testimony from 2 fact witnesses.

**Anticipation**

Spectrum has alleged that the relevant claims of the '845 Patent are anticipated by U.S. Patent No. 4,816,470 (the "'470 Patent"), The '470 Patent is a genus patent that covers a wide range of chemical compounds. Although sumatriptan succinate, for example, falls within the scope of the genus claims of the '470 Patent, it is not expressly disclosed in that patent. To determine whether sumatriptan succinate is inherently disclosed in the '470 Patent, the Court must weigh the applicability of a narrow exception, first articulated in *In re Petering*, 301 F.2d 676 (C.C.P.A. 1962), to the general rule that the disclosure of a genus does not necessarily constitute disclosure of a species encompassed by the genus. The *Petering* inquiry requires the Court to determine the size and scope of genera disclosed in the '470 Patent and then to determine whether a person of ordinary skill in the art can "at once envisage *each member*" of any such genus. *Petering*, 301 F.2d at 681 (emphasis in original). In that regard, the parties dispute whether the '470 Patent contains implicit "preferences" that narrow the scope of the genera actually disclosed in that patent. The parties further dispute whether a person of ordinary skill in the art would recognize that salts and certain isomers are included in the genera disclosed by the patent. Finally, the parties dispute the ultimate issue of whether each member of a given genus can be envisaged at once. Resolution of the foregoing disputes will require extensive expert testimony concerning organic chemistry and salt chemistry from 2 fact witnesses (inventors of the '470 and '845 patents), and 3 expert witnesses.

**Obviousness**

Spectrum has also alleged that the relevant claims of the '845 Patent are obvious in light of the '470 Patent. To resolve this issue, the Court must determine the scope and content of the '470 Patent, whether the teachings of that patent would motivate an ordinarily skilled person to make sumatriptan succinate, and whether that patent teaches away from sumatriptan compounds. The Court must also consider any evidence concerning "secondary considerations of non-obviousness." Secondary considerations include whether Imitrex met a long-felt but unresolved need for a safe and effective alternative to existing anti-migraine treatments and whether others tried but failed to develop such a safe and effective alternative prior to the invention of Imitrex. Other secondary considerations include commercial success, skepticism of others prior to the discovery of Imitrex, copying by competitors and the awards and accolades received by Imitrex. GSK anticipates that 1 expert witness and 1 fact witness will testify specifically concerning those issues, along with additional testimony from other fact witnesses.

In addition, the Court must also determine whether Spectrum has demonstrated that sumatriptan succinate or other sumatriptan compounds do not possess "unexpected properties" in comparison to compounds specifically disclosed in the '470 Patent. The properties at issue include pharmacological, pharmacokinetic and toxicological properties. Although there is considerable overlap between the issues relating to unexpected properties and the issues relating to Spectrum's inequitable conduct allegations, the testimony concerning unexpected properties will be broader because Spectrum appears to be challenging numerous aspects of the screening tests and results utilized by Glaxo to discover sumatriptan succinate. In addition to their testimony on issues previously discussed, a total of 5-7 fact witnesses and 4 expert witnesses will provide testimony concerning unexpected properties.

For the foregoing reasons, GSK respectfully requests that the Court extend the time allotted for trial to ten days. We are, of course, available for a conference to discuss this issue, at the Court's convenience.

Respectfully,

*/s/ Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld (#1014)

cc:  Peter T. Dalleo, Clerk (by hand)
     Edmund D. Johnson, Esquire (by hand)
     Edward H. Haug, Esquire (by e-mail)

539066