IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

........................................................................

|  |  |  |
|---|---|---|
| GLAXO GROUP LTD. | : | |
| d/b/a/ GLAXOSMITHKLINE | : | |
| | : | |
| Plaintiff and | : | |
| Counterclaim Defendant, | : | |
| | : | |
| v. | : | Civil Action No. 05-99-GMS |
| | : | |
| SPECTRUM PHARMACEUTICALS, INC., | : | **REDACTED VERSION** |
| | : | |
| Defendant and | : | |
| Counterclaim Plaintiff | : | |
| | : | |

........................................................................:

## __FINAL PRETRIAL ORDER__

### VOLUME 1

Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Plaintiff Glaxo Group Ltd
d/b/a GlaxoSmithKline*

Edmond D. Johnson (# 2257)
Peter B. Ladig (#3513)
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

*Attorneys for Defendant Spectrum
Pharmaceuticals, Inc.*

Original Filing Date:  October 13, 2006

Redacted Filing Date:  October 20, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GLAXO GROUP LTD
d/b/a GLAXOSMITHKLINE,

                              Plaintiff,

        - against -

SPECTRUM PHARMACEUTICALS, INC.,

                              Defendant.

Civil Action No. 05-99 (GMS)

CONFIDENTIAL – UNDER
PROTECTIVE ORDER

**FINAL PRETRIAL ORDER**

This matter having come before the court at a pretrial conference held

pursuant to Fed. R. Civ. P. 16, and Morris, Nichols, Arsht & Tunnell LLP, 1201

North Market Street, Wilmington, Delaware, (302) 658-9200, Cravath, Swaine &

Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019,

(212) 474-1000, and Fitzpatrick, Cella, Harper & Scinto, 30 Rockefeller Plaza, New

York, New York 10112, (212) 218-2100, having appeared as counsel for plaintiff

Glaxo Group Ltd d/b/a/ GlaxoSmithKline ("GSK"), and The Bayard Firm, 222

Delaware Avenue, Suite 900, Wilmington, Delaware 19899, (202) 655-5000, and

Frommer Lawrence & Haug LLP, 745 Fifth Avenue, New York, New York 10151,

(212) 588-0800, having appeared as counsel for defendant Spectrum

Pharmaceuticals, Inc. ("Spectrum"), the following actions were taken:

## I.    JURISDICTION

This is an action for patent infringement arising under the patent laws of

the United States, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction

over this action under 28 U.S.C. §§ 1338(a).  Subject matter jurisdiction is not

disputed.

## II.    STIPULATIONS AND STATEMENTS

The following stipulations and statements were submitted and are

attached to and made a part of this Order:

### A.    Statement of Uncontested Facts

1.    The parties stipulate to the facts listed in the attached Exhibit 1.

2.    These proposed stipulated facts require no proof at trial and will

become part of the evidentiary record in the case.

### B.    Statements of Contested Issues of Fact and Law

1.    GSK's statement of contested issues of fact and law is attached as

Exhibit 2.

2.    Spectrum's statement of contested issues of fact is attached as

Exhibit 3.

3.    Spectrum's statement of contested issues of law is attached as Exhibit 4.

**C.    Exhibit Lists**

1.    GSK's list of exhibits and Spectrum's objections to GSK's list of exhibits are attached as Exhibit 5.

2.    Spectrum's list of exhibits and GSK's objections to Spectrum's list of exhibits are attached as Exhibit 6.

3.    Subject to the remaining provisions of this Order, no party may use an exhibit not present on its exhibit list absent good cause shown.

4.    Each party reserves the right to use exhibits from the other party's trial exhibit list, even if not separately listed on its own exhibit list.  However, recognizing that a party has a right to object to use of its own listed exhibits by the other side, the parties have agreed that all such objections are preserved and need not be disclosed in advance of trial.

5.    Each party reserves the right to offer exhibits not set forth in its exhibit list for purposes of impeachment only. In addition, each party reserves the right to offer rebuttal exhibits that are not set forth on its exhibit list for use during testimony by the other side's witnesses. Each party also reserves the right to add, for good cause shown, additional exhibits to its exhibit list.

6.    Notwithstanding any contrary provisions in this Order, the parties will disclose and exchange copies of demonstrative and summary exhibits in accordance with the following procedure.  The parties shall exchange complete color representations of all demonstrative exhibits by no later than 6 p.m. on the evening prior to the day those exhibits will be used at trial. This paragraph shall not apply to demonstratives created during testimony or argument at trial.

7.    Any exhibit identified on a party's exhibit list and not objected to is deemed to be admissible and may be entered into evidence by that party, except that nothing herein shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case.

8.    Any document that on its face appears to have been authored by an employee, officer or agent of a party or third party shall be deemed prima facie to be authentic, subject to the right of the party against whom such a document is offered ("Opposing Party") to adduce evidence to the contrary or to require that the offering party provide authenticating evidence if the Opposing Party has a reasonable basis to believe the document is fabricated. Any objection to a document's authenticity must be made by the time of the Pretrial Conference.

9.    Legible copies of United States patents and the contents of United States and foreign patents and translations thereof (if in English or translated into English) and the contents of PTO file histories may be offered and received

in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

**D.      Witness Lists**

1.      GSK's list of the names and addresses of the fact witnesses that it intends to call at trial are attached as Exhibit 7.

Spectrum objects to witnesses Gatehouse and Tweats who are listed on GSK's "may call" witness list, on the grounds that GSK did not disclose these witnesses in its Rule 26 disclosures in this case.  Spectrum is willing to withdraw this objection if GSK produces these witnesses for deposition before trial.

Further, Spectrum requests that GSK inform Spectrum before the pretrial conference which of the witnesses on GSK's witness list GSK will make available to Spectrum for its case-in-chief, including particularly the witnesses appearing on GSK's "may call" list.  These witnesses are primarily UK residents under GSK's control, and in the event that GSK does not make them available, Spectrum requests permission to serve trial subpoenas to compel attendance of witnesses from GSK's list.

GSK proposes that whether GSK witnesses should be called both during Spectrum's case-in-chief and during GSK's own, be discussed at the pretrial conference.  In light of the logistical complications associated with travel from the United Kingdom and lodging of numerous elderly witnesses, as well as

general principles of efficiency, *cf.* Fed. R. Evid. 611(a), GSK believes that Spectrum should elicit any evidence purportedly in support of its case-in-chief from GSK fact witnesses during those witnesses' cross examination by Spectrum.

2.     Spectrum's list of the names and addresses of the fact and expert witnesses that it intends to call at trial are attached as Exhibit 8.

3.     Any witness not listed in the exhibits referenced above will be precluded from testifying absent good cause shown, except that each party reserves the right to call such rebuttal witnesses (who are not presently identifiable) as may be necessary, without prior notice to the opposing party.

4.     For those depositions that have been videotaped, a party may introduce the deposition excerpt by videotape instead of or in addition to by transcript.  If a party opts to introduce deposition testimony by videotape, any counter-designations of that same witness's deposition testimony must also be submitted by videotape.  When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given.

5.     Each party will provide to the other party the name and order of any witnesses that it intends to call to testify, whether live or by deposition

testimony, no later than 6:00 p.m. on the evening before the witness is expected to testify.

**E.    Expert Witnesses**

1.    GSK's statement setting forth the qualifications of each of its expert witnesses and the subject matter of each expert witness's testimony are attached as Exhibit 9.

2.    Spectrum's statement setting forth the qualifications of each of its expert witnesses and the subject matter of each expert witness's testimony are attached as Exhibit 10.

**F.    Deposition Designations, Objections and Counter-designations**

1.    GSK's list of deposition designations is attached as Exhibit 11. Spectrum's list of objections to GSK's deposition designations is attached as Exhibit 12.    Spectrum's list of counter-designations to GSK's deposition designations is attached as Exhibit 13.    GSK's list of objections to Spectrum's counter-designations is attached as Exhibit 14.

2.    Spectrum's list of deposition designations is attached as Exhibit 15. GSK's list of objections to Spectrum's deposition designations is attached as Exhibit 16.    GSK's list of counter-designations to Spectrum's deposition designations is attached as Exhibit 17.    Spectrum's list of objections to GSK's counter-designations is attached as Exhibit 18.

G.    **Special Damages**

This case does not involve any claims for damages.

H.    **Waivers of Claims and Defenses**

1.    GSK is not asserting Claims 6-9 and 12 of U.S. Patent No. 5,037,845 (the "'845 Patent") against Spectrum.

2.    Spectrum is not contesting infringement of Claims 1-5 and 10-11 of the '845 Patent and is not seeking a declaration that its proposed sumatriptan succinate injectable product would not infringe Claims 1-5 and 10-11 of the '845 Patent.

I.    **Jury Instructions**

This case will not be tried to a jury.

J.    **Proposed Findings of Fact and Conclusions of Law**

1.    GSK's Proposed Findings of Fact and Conclusions of Law are attached in duplicate as Exhibit 19.

2.    Spectrum's Proposed Findings of Fact and Conclusions of Law are attached in duplicate as Exhibit 20.

K.    **Settlement Negotiations**

The parties commenced substantive settlement negotiations in approximately March 2006, and those negotiations are ongoing.  Although the parties have made progress, it is not possible to predict whether this action will settle before trial.

L.    **Discovery**

Discovery in this action is complete.

M.    **Motions** *In Limine*

No motions *in limine* have been filed by either party.

III.    **TRIAL SCHEDULE**

This case is currently scheduled for a five-day trial, beginning at 9:00 a.m. on November 14, 2006. GSK requested that the Court set aside additional days for trial. Spectrum opposed this request. At a telephone conference with the parties on October 3, 2006, the Court decided that it was not in a position to extend the number of trial days at that time but that it will revisit the issue at the Pretrial Conference.

IV.    **TYPE OF TRIAL**

This is a non-jury trial.

V.    **NUMBER OF JURORS**

This is a non-jury trial.

VI.    **ORDER CONTROLS THE COURSE OF TRIAL**

This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## VII.   POSSIBILITY OF SETTLEMENT

Possibility of settlement of this case was considered by the parties.

SO ORDERED this _____ day of October, 2006.

_____

United States District Judge

Jointly submitted by,

MORRIS, NICHOLS, ARSHT &               THE BAYARD FIRM
TUNNELL LLP

*/s/ Julia Heaney (#3052)*                */s/ Edmond D. Johnson (#2257)*
Jack B. Blumenfeld (#1014)             Edmond D. Johnson (# 2257)
Julia Heaney (#3052)                   Peter B. Ladig (#3513)
1201 N. Market Street                  222 Delaware Avenue, Suite 900
P.O. Box 1347                          P.O. Box 25130
Wilmington, DE 19899                   Wilmington, DE  19899
(302) 658-9200                         (302) 655-5000

*Attorneys for Plaintiff Glaxo Group*  *Attorneys for Defendant Spectrum*
*Ltd d/b/a GlaxoSmithKline*            *Pharmaceuticals, Inc.*

Of Counsel:                            Of Counsel:

Evan R. Chesler                        Edgar H. Haug
Richard J. Stark                       Daniel G. Brown
David Greenwald                        FROMMER LAWRENCE & HAUG LLP
Andrei Harasymiak                      745 Fifth Avenue
CRAVATH, SWAINE & MOORE LLP            New York, New York 10151
Worldwide Plaza                        (212) 588-0800
825 Eighth Avenue
New York, NY  10019
(212) 474-1000

- and -

Robert L. Baechtold
Nicholas M. Cannella
Colleen Tracy
FITZPATRICK, CELLA, HARPER &
SCINTO
30 Rockefeller Plaza
New York, New York 10112
(212) 218-2100

Maximilian Grant
Amanda Hollis
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

EXHIBIT 1

## EXHIBIT 1 TO PRETRIAL ORDER

## THE PARTIES' STIPULATION OF UNCONTESTED FACTS

1.    Plaintiff Glaxo Group Ltd d/b/a/ GlaxoSmithKline ("GSK") is a corporation organized and existing under the laws of England with its principal place of business at Glaxo Wellcome House, Berkley Avenue, Greenford, Middlesex UB6 0NN, United Kingdom.

2.    Defendant Spectrum Pharmaceuticals, Inc. ("Spectrum") is a Delaware corporation organized and existing under the laws of Delaware with its principal place of business at 157 Technology Drive, Irvine, California, 92618

3.    United States Patent No. 5,037,845 ("the '845 patent"), entitled "Indole Derivative," was issued on August 6, 1991 and names Alexander W. Oxford as the sole inventor.

4.    GSK holds an approved new drug application ("NDA") No. 20,080, for Imitrex® ("Imitrex") injection, the active ingredient of which is sumatriptan succinate.

5.    GSK sells Imitrex products in the United States.  Imitrex injection is approved by the Food and Drug Administration ("FDA") for, and used in, the acute treatment of migraine attacks with or without aura in adults, as well as in the treatment of cluster headache.

**REDACTED**

6.    The chemical name of sumatriptan is 3-[2-(dimethylamino)ethyl]-N-methyl-1H-indole-5-methanesulfonamide.

7.    GSK is the owner of the entire right, title and interest in the '845 Patent and possesses the exclusive right to sue for infringement of the '845 Patent.  The applications that led to the '845 patent were filed on August 1, 1985, August 7, 1987, and March 1, 1989, respectively.  The '845 patent claims priority from the foreign application GSK filed in the United Kingdom on August 1, 1984.

8.    The pediatric exclusivity afforded the '845 patent expires on February 6, 2009.

9.    Every claim of the '845 patent claims, among other things, sumatriptan or sumatriptan succinate.

10.    The '845 patent is one of the United States patents—assigned to GSK—that is listed in the Orange Book for the GSK's Imitrex injectable products.

11.    Spectrum filed Abbreviated New Drug Application ("ANDA") REDACTED with the FDA under the provisions of 21 U.S.C. § 355(j) seeking approval to engage in the commercial manufacture, use and/or sale of generic sumatriptan succinate in injectable form prior to the expiration of the '845 patent.

12.    GSK alleged that the filing of Spectrum's ANDA REDACTED constituted patent infringement pursuant to 35 U.S.C. § 271(e)(2) and that commercial manufacture,

2

00403849

use, sale, offer for sale and/or importation of Spectrum's proposed ANDA products would infringe one or more of the claims of the '845 patent. On February 18, 2005, GSK filed an action for patent infringement of the '845 patent against Spectrum.

13. GSK does not assert in this action that Spectrum infringes claims 6-9 or claim 12 of the '845 patent.

14. Spectrum alleges that claims 1-5 and 10-11 of '845 patent are invalid and unenforceable.

15. Spectrum will not raise as a defense at trial non-infringement of claims 1-5 or 10-11 of the '845 patent, and stipulates, for purposes of this action only, that GSK has established that Spectrum's proposed ANDA product would, if commercially manufactured, used, sold, offered for sale and/or imported prior to the expiration of the '845 patent, infringe those patent claims.

16. GSK owns U.S. Patent No. 4,816,470 ("the '470 patent"). The applications that led to the '470 patent were filed on June 7, 1983, December 11, 1984 and November 15, 1985, respectively. The '470 patent issued on March 28, 1989. The '470 patent claims priority from the foreign application GSK filed in the United Kingdom on June 7, 1982.

00403849

17.    The '470 patent is prior art to the '845 patent under 35 U.S.C. § 102(e).  The '470

patent is one of the United States patents—assigned to GSK—that is listed in the

Orange Book for the GSK Imitrex injectable products.  The pediatric exclusivity

afforded the '470 patent expires on June 28, 2007.

00403849

EXHIBIT 2

**EXHIBIT 2 TO THE PRETRIAL ORDER**

**PLAINTIFF GLAXOSMITHKLINE'S STATEMENT OF
CONTESTED LEGAL AND FACTUAL ISSUES**

Pursuant to paragraph (2)(b) of the Court's Final Pretrial Order,

plaintiff Glaxo Group Ltd d/b/a GlaxoSmithKline ("GSK") submits the following

statement of contested legal and factual issues:

## I.    ANTICIPATION

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that U.S. Patent No. 4,816,470 (the "'470 Patent") renders Claims 1-5 or 10-11 of the '845 Patent invalid for anticipation pursuant to 35 U.S.C. § 102?

### B.    Contested factual issues

1.    Who is a person of ordinary skill in the art?

2.    Is each and every limitation of Claims 1-5 and 10-11 of the '845 Patent present, either expressly or inherently, in the '470 Patent?

3.    Is sumatriptan (3-[2-(dimethylamino)ethyl]-N-methyl-1H-indole-5-methanesulfonamide) or sumatriptan succinate expressly disclosed in the '470 Patent?

4.    Is sumatriptan or sumatriptan succinate inherently disclosed in the '470 Patent?

5.    What genera of chemical compounds are disclosed in the '470 Patent and what is the size of each such genus?

6.    Could a person of ordinary skill in the art "at once envisage each member" of a genus of chemical compounds that is both disclosed in the '470 Patent and contains one or more sumatriptan compounds within its scope?

## II.    OBVIOUSNESS

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that the differences between the subject matter of Claims 1-5 and 10-11 of the '845 Patent and the '470 Patent are such that the subject matter as a whole of those claims would have been obvious to a person of ordinary skill in the art in 1984?

### B.    Contested factual issues

1.    What is the level of ordinary skill in the art?

2.    What is the scope and content of the '470 Patent?

3.    Does the '470 Patent contain teachings that would motivate a person of ordinary skill in the art to make sumatriptan compounds?

4.    Does the '470 Patent teach away from sumatriptan compounds?

5.    What are the differences between the '470 Patent and Claims 1-5 and 10-11 of the '845 Patent?

6.    What secondary considerations (also known as objective indicia) of nonobviousness exist with respect to the inventions claimed in Claims 1-5 and 10-11 of the '845 Patent?

7.    Has Imitrex been a commercial success?

8.    Has Imitrex met a long-felt but unresolved need in the art for a safe and effective alternative to existing anti-migraine treatments?

9.    Did others fail to develop a safe and effective alternative to existing anti-migraine treatments prior to the discovery of Imitrex?

10.    Was there skepticism on the part of skilled artisans concerning the development of a safe and effective alternative to existing anti-migraine treatments prior to the discovery of Imitrex?

11.    Has there been copying of Imitrex by GSK's competitors?

12.    Has GSK received industry praise, awards or accolades for the development of Imitrex?

[[NYLIT:2395567v1:4156W:10/12/06--08:20 p]]

13.     Is there a nexus between any evidence of secondary considerations of non-obviousness and Claims 1-5 and 10-11 of the '845 Patent?

14.     Do sumatriptan compounds possess unexpected properties in comparison with the closest compounds specifically disclosed in the '470 Patent?

## III.     OBVIOUSNESS-TYPE DOUBLE PATENTING

### A.     Contested legal issues

1.     Has Spectrum proven by clear and convincing evidence that there are no patentable distinctions between Claims 1-5 and 10-11 of the '845 Patent and the claims of the '470 Patent?

### B.     Contested factual issues

1.     What is the respective scope of Claims 1-5 and 10-11 of the '845 Patent and the relevant claims of the '470 Patent?

2.     What are the differences between Claims 1-5 and 10-11 of the '845 Patent and the relevant claims of the '470 Patent?

3.     What secondary considerations (also known as objective indicia) of nonobviousness exist with respect to the inventions claimed in Claims 1-5 and 10-11 of the '845 Patent?

4.     Has Imitrex been a commercial success?

5.     Has Imitrex met a long-felt but unresolved need in the art for a safe and effective alternative to existing anti-migraine treatments?

6.     Did others fail to develop a safe and effective alternative to existing anti-migraine treatments prior to the discovery of Imitrex?

7.     Was there skepticism on the part of skilled artisans concerning the development of a safe and effective alternative to existing anti-migraine treatments prior to the discovery of Imitrex?

8.     Has there been copying of Imitrex by GSK's competitors?

9.     Has GSK received industry praise, awards or accolades for the development of Imitrex?

- 3 -

10.    Is there a nexus between any evidence of secondary considerations of non-obviousness and Claims 1-5 and 10-11 of the '845 Patent?

11.    Do sumatriptan compounds possess unexpected properties in comparison with compounds specifically claimed in the '470 Patent?

## IV.    ENABLEMENT (35 U.S.C. § 112, ¶1)

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that one of ordinary skill in the art could not, without undue experimentation, make or use the inventions claimed in Claims 1-5 and 10-11 of the '845 Patent on the basis of the disclosures in that patent coupled with information known in the art?

### B.    Contested factual issues

1.    What inventions are claimed in Claims 1-5 and 10-11 of the '845 Patent?

2.    What do the '845 Patent specification and the prior art teach to one of ordinary skill in the art concerning the making or using of the inventions claimed in Claims 1-5 and 10-11 of the '845 Patent?

## V.    WRITTEN DESCRIPTION (35 U.S.C. § 112, ¶1)

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that the '845 Patent specification does not describe the inventions claimed in Claims 1-5 and 10-11 sufficiently to convey to a person of ordinary skill in the art that the patentee had possession of those inventions at the time of the initial application for the '845 Patent?

### B.    Contested factual issues

1.    What inventions are claimed in Claims 1-5 and 10-11 of the '845 Patent?

2.    What is described in the '845 Patent specification to one of ordinary skill in the art?

- 4 -

## VI.    DEFINITENESS (35 U.S.C. § 112, ¶2)

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that a person of ordinary skill in the art would not understand the bounds of Claims 1-5 and 10-11 of the '845 Patent when read in light of the specification, such that that person could not determine whether a particular chemical compound, pharmaceutical composition or method of treating migraine infringes those claims or not?

### B.    Contested factual issues

1.    What is the meaning and scope of Claims 1-5 and 10-11 of the '845 Patent to one of ordinary skill in the art?

## VII.    INEQUITABLE CONDUCT

### A.    Contested legal issues

1.    Has Spectrum proven by clear and convincing evidence that individuals involved in the prosecution of the '845 Patent knowingly failed to disclose material information, or submitted material false information, to the United States Patent & Trademark Office ("PTO") with the intent of deceiving the patent examiner?

### B.    Contested factual issues

1.    Does the Declaration of Michael Rodney Jackson ("Jackson Declaration"), which was submitted to the PTO during the prosecution of the '845 Patent, contain any material false statements or omissions?

2.    Did anyone involved in the submission of the Jackson Declaration to the PTO know that the declaration contained material false statements or omissions?

3.    Did anyone involved in the submission of the Jackson Declaration to the PTO intend to deceive the patent examiner?

4.    Does the Declaration of Patrick Paul Anthony Humphrey ("Humphrey Declaration"), which was submitted to the PTO during the

- 5 -

prosecution of the '845 Patent, contain any material false statements or omissions?

     5.     Did anyone involved in the submission of the Humphrey Declaration to the PTO know that the declaration contained material false statements or omissions?

     6.     Did anyone involved in the submission of the Humphrey Declaration to the PTO intend to deceive the patent examiner?

     7.     Did GSK's patent attorney, Richard Fichter, submit material false information or fail to disclose material information when he submitted materials from the prosecution of U.S. Patent No. 4,994,483 (the "'483 Patent") in response to a request by the examiner of the '845 Patent?

     8.     Did Mr. Fichter know that he submitted material false information or fail to disclose material information when he submitted materials from the prosecution of the '483 Patent to the examiner of the '845 Patent?

     9.     Did Mr. Fichter submit materials from the prosecution of the '483 Patent to the examiner of the '845 Patent with an intent to deceive the examiner?

- 6 -

# EXHIBIT 3

FINAL PRE-TRIAL ORDER EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GLAXO GROUP LTD., d/b/a GLAXOSMITHKLINE,**<br><br>Plaintiff and Counterclaim-Defendant<br><br>v.<br><br>**SPECTRUM PHARMACEUTICALS, INC.,**<br><br>Defendant, and Counterclaim Plaintiff. | Civil Action No. 05 CV 99 GMS |

## EXHIBIT 3

### SPECTRUM'S STATEMENT OF CONTESTED ISSUES OF FACT

To the extent that any issue of fact is deemed to be an issue of law it should be so considered, and to the extent that any issue of law is deemed to be an issue of fact it should be so considered.

## I.  INTRODUCTION

1.  Whether the claims of the '845 patent are invalid.

2.  Whether the claims of the '845 patent are anticipated by the prior-art '470 patent.

3.  Whether the claims of the '845 would have been obvious at the time the invention was made.

4.  Whether the claims of the '845 patent are barred by the doctrine of nonstatutory double patenting based on the prior-art '470 patent.

5.   Whether the claims of the '845 patent are unenforceable as a result of affirmative misrepresentations and failure to disclose material information to the patent office coupled with intent to deceive.

### A.   ANTICIPATION/PRIOR INVENTION

6.   Whether the '470 patent disclosed each limitation of claim 1 of the '845 patent.

7.   Whether the '470 patent disclosed each limitation of claim 2 of the '845 patent.

8.   Whether the '470 patent disclosed each limitation of claim 3 of the '845 patent.

9.   Whether the '470 patent disclosed each limitation of claim 4 of the '845 patent.

10. Whether the '470 patent disclosed each limitation of claim 5 of the '845 patent.

11. Whether the '470 patent disclosed each limitation of claim 10 of the '845 patent.

12. Whether the '470 patent disclosed each limitation of claim 11 of the '845 patent.

### B.   OBVIOUSNESS

13. Whether claim 1 of the '845 patent is obvious in view of the prior art.

14. Whether claim 2 of the '845 patent is obvious in view of the prior art.

15. Whether claim 3 of the '845 patent is obvious in view of the prior art.

16. Whether claim 4 of the '845 patent is obvious in view of the prior art.

17. Whether claim 5 of the '845 patent is obvious in view of the prior art.

18. Whether claim 10 of the '845 patent is obvious in view of the prior art.

19. Whether claim 11 of the '845 patent is obvious in view of the prior art.

20. Whether secondary considerations under *Graham v. John Deere* support the finding of nonobviousness.

21. Whether sumatriptan exhibits surprising or unexpected results in comparison to compounds of the prior art including the '470 patent.

### C.    DOUBLE PATENTING

22. Whether claim 1 of the '845 patent is invalid under the judicially created doctrine of double patenting.

23. Whether claim 2 of the '845 patent is invalid under the judicially created doctrine of double patenting.

24. Whether claim 3 of the '845 patent is invalid under the judicially created doctrine of double patenting.

25. Whether claim 4 of the '845 patent is invalid under the judicially created doctrine of double patenting.

26. Whether claim 5 of the '845 patent is invalid under the judicially created doctrine of double patenting.

27. Whether claim 10 of the '845 patent is invalid under the judicially created doctrine of double patenting.

28. Whether claim 11 of the '845 patent is invalid under the judicially created doctrine of double patenting.

**D.    UNENFORCEABILITY / INEQUITABLE CONDUCT**

29. Whether the '845 patent is unenforceable as a result of inequitable conduct before the USPTO.

30. Whether GSK or any individual associated with the prosecution of the '845 patent made affirmative material misrepresentations of fact to the Patent Office.

31. Whether GSK or any individual associated with the prosecution of the '845 patent withheld material information from the Patent Office.

32. Whether GSK or any individual associated with the prosecution of the '845 patent acted with intent to deceive the Patent Office.

# EXHIBIT 4

FINAL PRE-TRIAL ORDER EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXO GROUP LTD., d/b/a<br>GLAXOSMITHKLINE,<br><br>Plaintiff and Counterclaim-Defendant<br><br>v.<br><br>SPECTRUM PHARMACEUTICALS, INC.,<br><br>Defendant, and Counterclaim Plaintiff. | Civil Action No. 05 CV 99 GMS |

EXHIBIT 4

SPECTRUM'S STATEMENT OF CONTESTED ISSUES OF LAW

To the extent that any issue of law is deemed to be an issue of fact, it should be so considered, and to the extent that any issue of fact is deemed to be an issue of law it should be so considered.

A.    ANTICIPATION

1.  Whether as a matter of law, the asserted claims of the '845 patent were anticipated by the disclosures in the '470 patent.

B.    OBVIOUSNESS

2.  Whether, as a matter of law, the asserted claims of the '845 patent are rendered obvious in view of the prior art cited by Spectrum.

C.    **DOUBLE PATENTING**

3.    Whether the '845 patent is invalid for non-statutory (obviousness-type) double

patenting.


D.    **UNENFORCEABILITY OF THE '845 PATENT - INEQUITABLE CONDUCT**

4.    Whether the '845 patent is unenforceable for inequitable conduct.

# EXHIBIT 5

**FINAL PRE-TRIAL ORDER EXHIBIT 5**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **GLAXO GROUP LTD., d/b/a GLAXOSMITHKLINE,**<br><br>Plaintiff and Counterclaim-Defendant<br><br>v.<br><br>**SPECTRUM PHARMACEUTICALS, INC.,**<br><br>Defendant, and Counterclaim Plaintiff. | Civil Action No. 05 CV 99 GMS |

**EXHIBIT 5**

**GSK'S LIST OF EXHIBITS AND SPECTRUM'S OBJECTIONS**

GSK's list of exhibits and Spectrum's objections follows.

## Spectrum's Legend for its Objections to Plaintiffs' Exhibits

Spectrum provides its objections to Plaintiffs' trial exhibits by using certain codes defined below. Spectrum reserves its right to object on other grounds should such an objection be warranted at trial. Further, these objections are made based on evidentiary issues facially apparent from the document itself. Spectrum reserves the right to make any additional objections that may arise from the purpose for which the document is offered or from the particular nature of the portion of the document relied upon (e.g., relevance, double hearsay).

| | | |
|---|---|---|
| A | = | Requires authentication before admission into evidence. Fed. R. Evid. 104 & 901. |
| F | = | No foundation. Fed. R. Evid. 602, 901, 1002, 1003 & 1006. |
| H | = | Hearsay if offered to prove the truth of the matter asserted. Fed. R. Evid. 801 & 803. |
| I | = | Incomplete document. Fed. R. Evid. 106, 403 & 1003 |
| Md | = | Proposed exhibit contains multiple documents |
| R | = | Not relevant. Fed. R. Evid. 401, 402 & 403 |
| RB | = | The document is irrelevant in view of the bifurcation of willfulness, PTX 13. |
| RI | = | The document is irrelevant in view of the stipulation of the parties regarding Spectrum's infringement defenses and counterclaims, PTX 14. |

00399717

**GSK v. Spectrum Pharmaceuticals, Inc.**
**No. 05-99-GMS**
**Plaintiff's Trial Exhibit List**

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 1 | U.S. Patent No. 5,037,845 (Certified Copy) | | | |
| Plaintiffs Exhibit 2 | U.S. Patent No. 5,037,845 File History (Certified Copy) | | | |
| Plaintiffs Exhibit 3 | U.S. Application No. 082,666 | | | |
| Plaintiffs Exhibit 4 | U.S. Application No. 761,392 | | | |
| Plaintiffs Exhibit 5 | U.S. Patent No. 4,816,470 (Certified Copy) | | | |
| Plaintiffs Exhibit 6 | U.S. Patent No. 4,994,483 (Certified Copy) | | | |
| Plaintiffs Exhibit 7 | Spectrum's Notice of Paragraph IV Certification | | | |

Page 1 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|-----------|-------------|---------|------------|-------------------------|
| Plaintiffs Exhibit 8 | Complaint For Patent Infringement (GSK v. Spectrum Pharmaceuticals, Inc.) | | | |
| Plaintiffs Exhibit 9 | Answer and Counterclaim of Defendant-Counterclaimant Spectrum Pharmaceuticals, Inc. | | | |
| Plaintiffs Exhibit 10 | Plaintiffs Reply to Defendant's Counterclaim | | | |
| Plaintiffs Exhibit 11 | First Amended Answer and Counterclaim of Defendant-Counterclaimant Spectrum Pharmaceuticals, Inc. | | | |
| Plaintiffs Exhibit 12 | Plaintiffs Reply to Counterclaim | | | |
| Plaintiffs Exhibit 13 | Stipulation (Agreement to Bifurcate Discovery Re: Exceptional Case and Willful Infringement) | | | |
| Plaintiffs Exhibit 14 | Stipulation (Joint Stipulation Re: Infringement) | | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 15 | Defendant Spectrum Responses and Objections to Plaintiffs First Set of Interrogatories | | RB (Interrogatory Responses 1-5) | |
| Plaintiffs Exhibit 16 | Spectrum Responses And Objections To Plaintiffs Second Set Of Interrogatories (Nos. 17-19) | | | |
| Plaintiffs Exhibit 17 | Spectrum's Responses and Objections to Plaintiffs First Set of Requests for Admission | | | |
| Plaintiffs Exhibit 18 | Curriculum Vitae of Dr. Edward Taylor | | | |
| Plaintiffs Exhibit 19 | Curriculum Vitae of Dr. Stephen R. Byrn | | | |
| Plaintiffs Exhibit 20 | Curriculum Vitae of Stephen Joseph Peroutka | | | |
| Plaintiffs Exhibit 21 | Curriculum Vitae of Shayne Cox Gad, Ph.D., D.A.B.T., A.T.S. | | | |

Page 3 of 25

00099701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|-----------|-------------|---------|------------|-------------------------|
| Plaintiffs Exhibit 22 | GB 2124210 A | | | |
| Plaintiffs Exhibit 23 | Dowle Abstract (100:103175y): Heterocyclic compounds and pharmaceuticals | | | |
| Plaintiffs Exhibit 24 | A Status Report on the Biology and Chemistry of AH 25086, AH 24732 and GR 32066, selective agonists at 5-HT receptors | GSK 00191018-41 | | |
| Plaintiffs Exhibit 25 | Report for six-monthly period ending 30 June 1984 (Rpt. No. WCD/84/010) | GSK 0022829 - 913 | | |
| Plaintiffs Exhibit 26 | 5-Alkylaminosulphonylmethyl tryptamines as potential anti-migraine agents. Part 1. | GSK 0026014-58 | | |
| Plaintiffs Exhibit 27 | International Standard Operating Procedure for the Registration and Numbering of Chemical Substances by Glaxo Research Companies | GSK 00363268 - 305 | | |

Page 4 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 28 | Standard Operating Procedure for the Registration and Numbering of Chemical Substances by Glaxo Group Research Ltd. (Rpt No. SOP/SI/81 /2) | GSK 00363200-11 | | |
| Plaintiffs Exhibit 29 | International Standard Operating Procedure for the Registration and Numbering of Chemical Substances by Glaxo Wellcome Research Companies | GSK 00363306-40 | | |
| Plaintiffs Exhibit 30 | Standard Operating Procedure for the Registration and Marking of Chemical Substances by Glaxo Group Research Ltd. | GSK 00363212-28 | A, F | |
| Plaintiffs Exhibit 31 | Standard Operating Procedure for the Registration and Numbering of Chemical Substances by Glaxo Group Research Ltd. | GSK 00363229-67 | A, F | |
| Plaintiffs Exhibit 32 | Migraine I Bimonthly Objectives, March - April 1984 | GSK 00120677-80 | | |

00399701

**GSK v. Spectrum Pharmaceuticals, Inc.**
**No. 05-99-GMS**
**Plaintiff's Trial Exhibit List**

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 33 | GR 43175A, A selective 5-HT S2-receptor agonist for use in the treatment of migraine: a status report up to 30th September 1984 | GSK 00226747-58 | | |
| Plaintiffs Exhibit 34 | Remington: The Science and Practice of Pharmacy, Nineteen Edition p. 1457 (1995) | | R, H | |
| Plaintiffs Exhibit 35 | Hawley's Condensed Chemical Dictionary, Richard J. Lewis, Sr. ed., John Wiley & Sons, Inc., Thirteenth Edition pp. 291, 981 (1997) | | R, H | |
| Plaintiffs Exhibit 36 | Background to GR43175: Structures of compounds suggested Feb/Mar 1984 | GSK 00268406-07 | I | |
| Plaintiffs Exhibit 37 | Handbook of Pharmaceutical Salts: Properties, Selection, and Use, P. Heinrich Stahl et al. eds. Wiley (2002) | | R, H | |
| Plaintiffs Exhibit 38 | Stephen M. Berge et al., *Pharmaceutical Salts*, 66 J. Pharm. Sci., 1-19 (1977) | | R, H | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 39 | Philip L. Gould, *Salt Selection for Basic Drugs*, 33 Int. J. Pharm. 201-217 (1986) | | R, H | |
| Plaintiffs Exhibit 40 | Compound Data Cards for the GR43175 salts | GSK 00058094-110; GSK 00058190; GSK 00058194-99 | | |
| Plaintiffs Exhibit 41 | Preparative Detail Sheet for 43175A | GSK 00058127 | | |
| Plaintiffs Exhibit 42 | Lab Notebook 355 | GSK 00027710-8048 | R, F | |
| Plaintiffs Exhibit 43 | Lab Notebook 422 | GSK 00036462-757 | R, F | |
| Plaintiffs Exhibit 44 | Lab Notebook 460 | GSK 00028663-940 | | |
| Plaintiffs Exhibit 45 | Lab Notebook 591 | GSK 00500302-904 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 46 | Lab Notebook 614 | GSK 00501209-612 | R, F | |
| Plaintiffs Exhibit 47 | Lab Notebook 664 | GSK 00000892-1198 | R, F | |
| Plaintiffs Exhibit 48 | Lab Notebook 671 | GSK 00502525-862 | R, F | |
| Plaintiffs Exhibit 49 | Lab Notebook 685 | GSK 00502863-3208 | R, F | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 50 | Migraine Project Committee Monthly Reports (1977-1991) | GSK 00506946 - 507282<br>GSK 00283145 - 284501<br>GSK 00159274 - 159527<br>GSK 00146730 - 146763<br>GSK 00146691 - 146729<br>GSK 00146656 - 146690<br>GSK 00146618 - 146652<br>GSK 00159528 - 162686 | Md | |
| Plaintiffs Exhibit 51 | Migraine II Bimonthly Report, January – February 1983 | GSK 00144662-92 | | |
| Plaintiffs Exhibit 52 | 5-HT Migraine Quarterly Report, September – November 1989 | GSK 00143860-82 | | |
| Plaintiffs Exhibit 53 | 5-HT Migraine Quarterly Report, December 1989 – February 1990 | GSK 00143839-59 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 54 | Cardiovascular II (5-hydroxytryptamine) Project Group: Project Review for six-monthly period ending 31 December 1980. | GSK-00189820-55 | | |
| Plaintiffs Exhibit 55 | Cardiovascular II (5-Hydroxytryptamine) Project Group: Project Review for six-monthly period ending 31 December 1981. | GSK-00204982-5017 | | |
| Plaintiffs Exhibit 56 | 5-Hydroxytryptamine (Peripheral) Project Group: Project Review for the six-monthly period ending 30 June 1983. | GSK 00191042-89 | | |
| Plaintiffs Exhibit 57 | 5-Hydroxytryptamine (Peripheral) Project Group: Project Review for the six-monthly period ending 30 June 1984. | GSK 00205588-639 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 58 | Cardiovascular II (5-hydroxytryptamine) Project Group: Project  Review for six-monthly period ending 30 June 1985. | GSK 00205474-509 | | |
| Plaintiffs Exhibit 59 | 5-Hydroxytryptamine (Peripheral) Project Group: Project Review for  the six-monthly period ending 31 December 1985. | GSK 00189914-61 | | |
| Plaintiffs Exhibit 60 | Annual Report for the Migraine Project. August 1989 – August 1990 | GSK 00196205-41 | | |
| Plaintiffs Exhibit 61 | Annual Report for the Migraine Project. September 1990 – September 1991 | GSK 00190095-128 | | |
| Plaintiffs Exhibit 62 | *The Potential Carcinogenicity of Nitrosatable Drugs*, W.H.O. Symposium, Geneva, 8-14 (1978) | | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 63 | D. Gatehouse and D. Wedd, *The Bacterial Mutagenicity of Three Naturally Occurring Indoles After Reaction With Nitrous Acid*, Mutation Research 124:34 - 51 (1983) | | | |
| Plaintiffs Exhibit 64 | Raw Data: Salmonella/Ames Test Nitrosation Assay (43175C) | GSK 00363341-42 | | |
| Plaintiffs Exhibit 65 | Raw Data: Salmonella/Ames Test Nitrosation Assay (43175C) | GSK 00363343-44 | | |
| Plaintiffs Exhibit 66 | Microbial Mutagenicity Screen on GR43175C (GLP Study: V11023) | GSK 00190361-444 | | |
| Plaintiffs Exhibit 67 | Raw Data: Nitrosation Assay/Ames (GR32066A) | GSK 00132264-65 | | |
| Plaintiffs Exhibit 68 | Raw Data: Nitrosation Assay/Ames (GR32066A) | GSK 00132266-67 | | |
| Plaintiffs Exhibit 69 | Raw Data: Nitrosation Assay/Ames (GR32066A) | GSK 00132268-69 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 70 | Microbial Mutagenicity Screen of GR32066A: An S2-Agonist | GSK 00190775-820 | | |
| Plaintiffs Exhibit 71 | The World Heath Organization Procedure for Determining the Nitrosatability of Amine-containing Compounds (N.A.P. Test) (PATHSOP 112) | GSK 00397152-56 | | |
| Plaintiffs Exhibit 72 | Nitrosation S2 Agonist Data: 5HT1-Like Compounds | GSK 00131972-2589 | H, F, R | |
| Plaintiffs Exhibit 73 | Nitrosation S2 Agonist Data: 5HT1-Like Compounds | GSK 00131974-82 | R, F, H | |
| Plaintiffs Exhibit 74 | GR43175 Analogues: Limited NAP Test Results on S2 Agonists | GSK 00120563-65 | | |
| Plaintiffs Exhibit 75 | GR43175 Analogues: Limited NAP Test Results on S2 Agonists | GSK 00120566-69 | | |
| Plaintiffs Exhibit 76 | Protocol for Microbial Mutagenicity Screening of GR 32066A (83 Mut 1) | GSK 00397333-87 | R, F, H | |

Page 13 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|-----------|-------------|---------|------------|-------------------------|
| Plaintiffs Exhibit 77 | Protocol: Microbial Mutagenicity Screening of GR 43175A (84 Mut 11) | GSK 00397388-447 | R, F, H | |
| Plaintiffs Exhibit 78 | Microbial Mutagenicity Screen: GR43175A (S2 Project) | GSK 00190670-706 | | |
| Plaintiffs Exhibit 79 | Report of the UKEMS Sub-Committee on Guidelines for Mutagenicity Testing, The United Kingdom Environmental Mutagen Society, p. 245-260 (1984) | | | |
| Plaintiffs Exhibit 80 | C.L. Walters, *Drug Nitrosation under Conditions Simulating those within the Human Stomach*, The Significance of the Nitrosation of Drugs, Gustav Fischer (1990) | | R, H | |
| Plaintiffs Exhibit 81 | B.C. Challis, The chemistry offormation of N-Nitroso compounds, Safety Evaluation Of Nitrosatable Drugs and Chemicals , 16 - 51 (1981) | | R, H | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 82 | GR 40370, Reason for Termination of Exploratory Development. | GSK 00133905-11 | | |
| Plaintiffs Exhibit 83 | GR 43175C: Five Weeks Oral Toxicity Study In RH Rats (R10780) | GSK 00227930-8173 | | |
| Plaintiffs Exhibit 84 | GR40370D: Five Week Oral Toxicity Study in AHA Rats (Study number R12464) - Summary Report) | GSK 00179164-313 | R, F | |
| Plaintiffs Exhibit 85 | The synthesis of 3-(2-aminoethyl) indazoles as 5-HT mimetics | GSK 00138212-38 | R, F, H | |
| Plaintiffs Exhibit 86 | Declaration of Dr. Patrick Humphrey | GSK 00268471-79 | | |
| Plaintiffs Exhibit 87 | Raw Data: Barbitone Anaesthetised Dog GR32066 | GSK 00080302-6 | | |
| Plaintiffs Exhibit 88 | Raw Data: Barbitone Anaesthetised Dog GR32066 | GSK 00080766-70 | | |

Page 15 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 89 | Raw Data: Barbitone Anaesthetised Dog GR32066 | GSK 00080775-8 | | |
| Plaintiffs Exhibit 90 | Raw Data: Barbitone Anaesthetised Dog GR32066 | GSK 00080779-82 | | |
| Plaintiffs Exhibit 91 | Raw Data: Barbitone Anaesthetised Dog GR32066 (10xCD50) | GSK 00080783-4 | | |
| Plaintiffs Exhibit 92 | Raw Data: Barbitone Anaesthetised Dog GR32066 (10xCD50) | GSK 00080786-7 | | |
| Plaintiffs Exhibit 93 | Raw Data: Barbitone Anaesthetised Dog GR32066 (10xCD50) | GSK 00080789-90 | | |
| Plaintiffs Exhibit 94 | Raw Data: Barbitone Anaesthetised Dog GR32066 (10xCD50) | GSK 00080793-4 | | |
| Plaintiffs Exhibit 95 | Raw Data: Barbitone Anaesthetised Dog GR34456 | GSK 00080873-8 | | |
| Plaintiffs Exhibit 96 | Raw Data: Barbitone Anaesthetised Dog GR34456 (10xCD50) | GSK 00080983-4 | R, F | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 97 | Raw Data: Barbitone Anaesthetised Dog GR43175 | GSK 00081921-5 | | |
| Plaintiffs Exhibit 98 | Raw Data: Barbitone Anaesthetised Dog GR43175 | GSK 00082565-9 | | |
| Plaintiffs Exhibit 99 | Raw Data: Barbitone Anaesthetised Dog GR43175 | GSK 00082571-5 | | |
| Plaintiffs Exhibit 100 | Raw Data: Barbitone Anaesthetised Dog GR43175 | GSK 00082594-8 | | |
| Plaintiffs Exhibit 101 | Raw Data: Barbitone Anaesthetised Dog GR43175 (10xCD50) | GSK 00082577-80 | | |
| Plaintiffs Exhibit 102 | Raw Data: Barbitone Anaesthetised Dog GR43175 (10xCD50) | GSK 00082581-5 | | |
| Plaintiffs Exhibit 103 | Raw Data: Barbitone Anaesthetised Dog GR43175 (10xCD50) | GSK 00082586-9 | | |
| Plaintiffs Exhibit 104 | Raw Data: Barbitone Anaesthetised Dog GR43175 (10xCD50) | GSK 00082590-3 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 105 | Raw Data: Cumulative i.v. effects of 43175C on carotid, renal and femoral artery vascular beds | GSK 00090663-70 | | |
| Plaintiffs Exhibit 106 | Raw Data: Peak effects of 43175C on carotid, renal and femoral artery vascular beds | GSK 00090672-6 | | |
| Plaintiffs Exhibit 107 | Pharmacology Method Sheet: Preparation of Dog Saphenous Vein and Rabbit Aorta | GSK 00120097-101 | | |
| Plaintiffs Exhibit 108 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00080802-3 | R, F | |
| Plaintiffs Exhibit 109 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00080805-6 | R, F | |
| Plaintiffs Exhibit 110 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00081821-4 | R, F | |

Page 18 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 111 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00081843-6 | R, F | |
| Plaintiffs Exhibit 112 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00081847-9 | R, F | |
| Plaintiffs Exhibit 113 | Raw Data: Barbitone Anaesthetised Dog GR32066 (i.d. administration) | GSK 00081850-1 | R, F | |
| Plaintiffs Exhibit 114 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00081926-8 | R, F | |
| Plaintiffs Exhibit 115 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00081930-4 | R, F | |
| Plaintiffs Exhibit 116 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00081936-9 | R, F | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 117 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00081941-4 | R, F | |
| Plaintiffs Exhibit 118 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00081949-52 | R, F | |
| Plaintiffs Exhibit 119 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00083413-6 | R, F | |
| Plaintiffs Exhibit 120 | Raw Data: Barbitone Anaesthetised Dog GR43175 (i.d. administration) | GSK 00083810-5 | R, F | |
| Plaintiffs Exhibit 121 | The pharmacokinetic profile of some analogues of GR43175 and GR40370 after iv and oral administration to the rat at 10mg/kg | GSK 00196288-318 | | |
| Plaintiffs Exhibit 122 | Evaluation of the pharmacokinetic profiles of a series of S2-like agonists in the rat WBP/88/049 (Oct 1988) | GSK 00166126-39 | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 123 | André J. Hubert et al., *Catalyzed Prototropic Rearrangements. Part 3. Metal-Carbonyl-catalysed Isomerization of N-Allylsulphonamides to N-Prop-2-enyl and N-Propylidene Derivatives,* J.Chem.Soc. Perkin Trans. 2 11 (1977). | | | |
| Plaintiffs Exhibit 124 | United States Patent No. 4,922,021 | | | |
| Plaintiffs Exhibit 125 | W.R. Hertler, *Free-Radical Chain Isomerization of N-Vinylsulfonamides,* 39 J. Org. Chem. 3219 (1974). | | | |
| Plaintiffs Exhibit 126 | Allan N. Tischler and Maureen H. Tischler, *Dilithiated N-Allylcarboxamides. A Synthesis of Enamides,* 37 Tetrahedron. Lett. 3407 (1978). | | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 127 | H. Breederveld, *The Chemistry of the N-Alkylaldimines. I. The Reaction of N-Alkylaldimines With Acetic Anhydride*, 79 Recueil 401 (1960) | | | |
| Plaintiffs Exhibit 128 | M.S. Kharasch and Hill M. Priestley, *The Addition of N-Haloamides to Olefins*, 61 J. Am. Chem. Soc. 3425 (1939). | | | |
| Plaintiffs Exhibit 129 | J.K. Stille and Y. Becker, *Isomerization of N-Allylamides and -imides to Aliphatic Enamides by Iron, Rhodium, and Ruthenium Complexes*, 45 J. Org. Chem., 2139 (1980). | | | |
| Plaintiffs Exhibit 130 | H. Breederveld, *The Chemistry of the N-Alkylaldimines. II. The Reaction of N-Propylpropanaldimine With Acetic Anhydride*, 79 Recueil 1197 (1960). | | | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 131 | Andre J. Hubert et al., *Catalyzed Prototropic Rearrangements. Part 2. Metal-Carbonyl-catalysed Isomerization of N-Allylamides to Prop-2-enyl Derivatives*, J.Chem.Soc. Perkin Trans. 2 1954 (1973). | | | |
| Plaintiffs Exhibit 132 | Giovanna Delogu, et al., *Hydrcarbonoylation of Unsaturated Nitrogen Compounds. Synthesis of N-Protected Aminoacid Derivatives from N-Substituted Phthalimides*, 268 J. Organomet. Chem. 167 (1984). | | | |
| Plaintiffs Exhibit 133 | Exhibit C (from The Expert Report of Edmond C. Taylor, Ph.D.) | | | |
| Plaintiffs Exhibit 134 | Chemical Drawings '470 Patent Examples | | | |
| Plaintiffs Exhibit 135 | Structures of Compounds Synthesized During the Migraine Project | GSK 00286787-7062 | F | |

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 136 | Stereochemistry of Organic Compounds (Wiley Eastern Limited 1991) | | R, H, Rights reserved | |
| Plaintiffs Exhibit 137 | Imitrex Product Contribution | GSK 00287567-78 | Rights reserved | |
| Plaintiffs Exhibit 138 | Total Migraine Market | GSK 00287579-97 | Rights reserved | |
| Plaintiffs Exhibit 139 | Prescribing Information for Imitrex Injection | | Rights reserved | |
| Plaintiffs Exhibit 140 | Prescribing Information for Sumatriptan Succinate Injection | | Rights reserved | |
| Plaintiffs Exhibit 141 | Summary of Plasma Concentrations for GR43175 and GR34456 in Rat | | Rights reserved | |
| Plaintiffs Exhibit 142 | MET 480 & MET 481 -- Concentrations of GR 43175 base in rat plasma | GSK 00255994-6 | | |

Page 24 of 25

00399701

GSK v. Spectrum Pharmaceuticals, Inc.
No. 05-99-GMS
Plaintiff's Trial Exhibit List

| Exhibit # | Description | Bates # | Objections | Responses to Objections |
|---|---|---|---|---|
| Plaintiffs Exhibit 143 | Spectrum Sales Forecast | | Rights reserved | |

Page 25 of 25

00399701